UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

ROZAIRE ALCEGAIRE,                                                                         Plaintiff,

v.                                                                   Civil Action No. 3:15-cv-266-DJH-CHL

JBS USA, LLC,                                                                           Defendant.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Rozaire Alcegaire, a former employee of Defendant JBS USA, LLC, was injured at work when a forklift hit the platform on which she was standing. Alcegaire subsequently missed work on numerous occasions. JBS terminated Alcegaire's employment, citing her failure to provide documentation for her absences. Alcegaire then sued, alleging that JBS interfered with her Family and Medical Leave Act (FMLA) rights, discriminated against her in violation of the Kentucky Civil Rights Act (KCRA), and wrongfully discharged her for pursuing a workers' compensation claim in violation of Ky. Rev. Stat. § 342.197(1). (Docket No. 1) JBS seeks summary judgment on all claims asserted by Alcegaire. (D.N. 34) For the reasons explained below, JBS's motion will be granted.

### I.

JBS operates a pork processing plant in Louisville, Kentucky, where Alcegaire worked. (D.N. 35-2, PageID # 124, 126) In April 2014, while at work, Alcegaire fell to the ground after the platform she was standing on was hit by a forklift. (D.N. 35-2, PageID # 126; D.N. 35-3, PageID # 174; D.N. 42-1, PageID # 239-40) The fall injured Alcegaire's head and back. (D.N. 42-1, PageID # 240) The next day, a doctor examined Alcegaire and released her to work on a modified basis with a restriction of sit-down duty. (D.N. 35-2, PageID # 126; D.N. 35-3, PageID

1

# 174) Two days later, a doctor reexamined Alcegaire and again released her to work on a modified basis with a restriction of sit-down duty. (D.N. 35-2, PageID # 126; D.N. 35-3, PageID # 175; D.N. 42-1, PageID # 242) The parties dispute whether JBS offered Alcegaire a job as a box maker, which could be done sitting down. (*See* D.N. 35-2, PageID # 126; D.N. 35-3, PageID # 175; D.N. 42-1, PageID # 245) Thereafter, Alcegaire was absent from work. (D.N. 35-2, PageID # 127-28; D.N. 42-1, PageID # 246)

JBS's attendance policy provides that employees are "expected to arrive each day on time to begin work" and that "[i]t is the employee's responsibility to properly notify the company if they will not be able to report to work." (D.N. 35-2, PageID # 125; D.N. 42-7, PageID # 281-82) "Proper notification involves the employee calling the answering machine dedicated to that purpose at least 30 minutes prior to their scheduled starting time and providing identifying information and the reason for the absence." (*Id.*) If the employee is going to miss multiple days for any reason, "the employee is expected to notify the company at least 30 minutes before the start of their shift on each day that will be missed." (*Id.*) Each employee absence is considered an "occurrence" unless the absence is excused. (D.N. 42-7, PageID # 282-83) Nine or more "occurrences" result in an employee's termination. (D.N. 35-2, PageID # 125; D.N. 42-7, PageID # 284) FMLA-related leave qualifies as an "excused absence" for which no "occurrence" is given. (D.N. 42-7, PageID # 283) However, the policy provides that "employees need to provide as much advance notice as possible" when taking FMLA leave and other excused absences. (*Id.*)

Alcegaire failed to call in her absences, prompting JBS to have three meetings with her to address her unexcused absences. (D.N. 35-2, PageID # 127-28) After those meetings, Alcegaire

2

still failed to call in her absences. (*Id.*) Alcegaire eventually filed a workers' compensation claim with JBS. (D.N. 42-1, PageID # 252)

JBS terminated Alcegaire in May 2014, citing her failure to comply with the company's attendance policy. (D.N. 42-6, PageID # 280) Alcegaire alleges that JBS fired her only after receiving a letter from her attorney regarding her workers' compensation claim. (D.N. 42, PageID # 229-30)

Alcegaire sued JBS, alleging interference with her FMLA rights (Count I), discrimination under the KCRA (Count II), and wrongful discharge under Ky. Rev. Stat. § 342.197(1) (Count III). (D.N. 1) In her response to JBS's motion for summary judgment, Alcegaire concedes her KCRA discrimination claims. (D.N. 42, PageID # 218) Thus, the Court's analysis will be limited to her claims of FMLA interference (Count I) and wrongful discharge (Count III).

**II.**

Summary judgment is required when the moving party shows, using evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see* 56(c)(1). For purposes of summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, the Court "need consider only the cited materials." Fed. R. Civ. P. 56(c)(3); *see Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 136 (6th Cir. 2014). If the nonmoving party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the fact may be treated as undisputed. Fed. R. Civ. P. 56(e). To survive a motion for summary judgment, the nonmoving party must establish a genuine issue of material fact with respect to each element of

each of her claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (noting that "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial").

## A. FMLA Interference

Alcegaire claims that JBS interfered with her rights under the FMLA. The FMLA grants an eligible employee a total of twelve workweeks of leave during any twelve-month period for "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The FMLA also makes it unlawful "for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." § 2615(a)(1). To establish a prima facie claim of interference under the FMLA, Alcegaire must show that "(1) [she] was an eligible employee; (2) [JBS] was an employer subject to the FMLA; (3) [she] was entitled to leave under the FMLA; (4) [she] gave [JBS] notice of [her] intention to take FMLA leave; and (5) [JBS] denied [her] FMLA benefits to which [she] was entitled." *Romans v. Mich. Dep't of Human Servs.*, 668 F.3d 826, 840 (6th Cir. 2012) (citing *Grace v. USCAR & Bartech Tech. Servs.*, 521 F.3d 655, 669 (6th Cir. 2008)).

JBS argues that (1) Alcegaire was not entitled to leave under the FMLA because she did not suffer from a serious health condition; and (2) Alcegaire's claim fails as a matter of law because she did not comply with the company's notice and procedural requirements for attendance. (D.N. 36, PageID # 192-97) Alcegaire responds that (1) she did in fact suffer from a serious health condition; and (2) she gave JBS sufficient notice of her need for FMLA leave. (D.N. 42, PageID # 222-24) The Court will analyze these two issues—(1) whether Alcegaire

suffered from a serious health condition and (2) whether she properly notified JBS of her absences—in turn.

1. **"Serious Health Condition"**

The FMLA defines "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves . . . inpatient care in a hospital, hospice, or residential medical care facility [or] continuing treatment by a health care provider." 29 U.S.C. § 2611(11)(A)-(B). Under FMLA regulations, continuing treatment by a health care provider includes "[a] period of incapacity of more than three consecutive, full calendar days," followed by treatment or incapacity relating to the same condition. 29 C.F.R. § 825.115(a). "[I]ncapacity means inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom." § 825.113(b).

It is undisputed that Alcegaire's doctor told her that she could work, albeit on a modified, sit-down basis. (*See* D.N. 35-2, PageID # 126; D.N. 35-3, PageID # 174-75; D.N. 42-1, PageID # 242) "[T]he possibility that a person can work removes FMLA protection." *Whitworth v. Consol. Biscuit Co.*, No. 6:06-112-DCR, 2007 WL 1075774, at *9 (E.D. Ky. Apr. 6, 2007) (citations omitted). Incapacity requires the "inability to work," 29 C.F.R. § 825.113(b), whereas Alcegaire's doctor found her capable of work. It follows that Alcegaire was not incapacitated as that term is defined in the regulation.

Alcegaire cites Eighth Circuit case law for the proposition that an employee's inability to work in her current job due to a serious health condition constitutes incapacity under the FMLA. (D.N. 42, PageID # 223) In the Eighth Circuit case, the plaintiff's doctor determined that she was unable to perform the functions of her job and that she needed a break from her particular work environment. *Stekloff v. St. John's Mercy Health Sys.*, 218 F.3d 858, 860 (8th Cir. 2000).

5

In other words, the plaintiff was completely unable to continue working at her place of employment. The present case is thus distinguishable from *Stekloff*. Alcegaire was not completely unable to continue working for JBS. In fact, her doctor determined that she could work a sit-down job with JBS. (D.N. 35-2, PageID # 126; D.N. 35-3, PageID # 174-75; D.N. 42-1, PageID # 242) Therefore, Alcegaire's reliance on *Stekloff* is misplaced.

Alcegaire further argues that it is undisputed that she was unable to perform her regular job duties as a meat cutter for JBS. (D.N. 42, PageID # 223) But the issue is not whether Alcegaire could continue working as a meat cutter; rather, the issue is whether she was able to work for JBS at all. *See* 29 C.F.R. § 825.113(b) (defining "incapacity" as "inability to work"); *see also Linebarger v. Honda of Am. Mfg.*, 870 F. Supp. 2d 513, 524 (S.D. Ohio 2012) (explaining that incapacitation "means that a 'health care provider' has determined that . . . the employee cannot work"). No health care provider determined that Alcegaire could not work. Indeed, both parties cite evidence showing that Alcegaire's doctor determined that she could work. (*See* D.N. 35-2, PageID # 126; D.N. 35-3, PageID # 174-75; D.N. 42-1, PageID # 242) Based on this evidence, the Court finds that Alcegaire was not incapacitated. Therefore, she did not have a serious medical condition entitling her to leave under the FMLA. *See* 29 U.S.C. § 2612(a)(1)(D).

2. **Notice and Procedural Requirements**

FMLA regulations state that "[w]here an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances[1] justify the failure to

---

[1] "Unusual circumstances would include situations such as when an employee is unable to comply with the employer's policy that requests for leave should be made by contacting a specific number because on the day the employee needs to provide notice of his or her need for FMLA leave there is no one to answer the call-in number and the voice mail box is full." 29 C.F.R. § 825.302(d). No such unusual circumstances exist in this case.

comply, FMLA-protected leave may be delayed or denied." 29 C.F.R. § 825.302(d). Similarly, the Sixth Circuit has held "that an employer may enforce its usual and customary notice and procedural requirements against an employee claiming FMLA-protected leave" except in the case of unusual circumstances. *Srouder v. Dana Light Axle Mfg.*, 725 F.3d 608, 615 (6th Cir. 2013).

JBS's attendance policy provides that employees are "expected to arrive each day on time to begin work" and that "[i]t is the employee's responsibility to properly notify the company if they will not be able to report to work." (D.N. 35-2, PageID # 125; D.N. 42-7, PageID # 281-82) "Proper notification involves the employee calling the answering machine dedicated to that purpose at least 30 minutes prior to their scheduled starting time and providing identifying information and the reason for the absence." (*Id.*) If the employee is going to miss multiple days, "the employee is expected to notify the company at least 30 minutes before the start of their shift on each day that will be missed." (*Id.*)

It is undisputed that Alcegaire failed to call in her absences as required by the policy, prompting JBS to have three meetings with her to address her unexcused absences. (D.N. 35-2, PageID # 127-28) Even after those meetings, Alcegaire failed to call in her absences. (*Id.*) Alcegaire's failure to comply with JBS's call-in requirements is fatal to her FMLA interference claim. *See Cundiff v. Lenawee Stamping Corp.*, 597 F. App'x 299, 299-300 (6th Cir. 2015) (affirming summary judgment for the defendant on plaintiff's FMLA interference claim because plaintiff violated defendant's attendance policy by missing work without calling in); *Srouder*, 725 F.3d at 609, 615 (same).

Alcegaire argues that she gave "sufficient notice to JBS of her need for FMLA leave." (D.N. 42, PageID # 223) But that is irrelevant. The undisputed facts show that Alcegaire

7

repeatedly failed to call in her absences in violation of the usual notice and procedural requirements contained in JBS's attendance policy. (*See* D.N. 35-2, PageID # 127-28) That alone is fatal to her claim. *See Srouder*, 725 F.3d at 615 (holding that, "regardless of whether [plaintiff] provided sufficient FMLA notice to [defendant] . . . , [defendant] was nevertheless justified in terminating [plaintiff's] employment for [her] failure to follow the call-in requirements of [defendant's] attendance policy"). Alcegaire responds that JBS's attendance policy did not require employees to call in for each FMLA absence. (D.N. 42, PageID # 229) But the attendance policy contains no such exception. Although FMLA leave does not result in an "occurrence" under the policy (D.N. 42-7, PageID # 283), the policy contains no exceptions to the call-in requirements. In fact, the policy provides that "employees need to provide as much advance notice as possible" when taking FMLA leave and other excused absences. (*Id.*) Therefore, Alcegaire's argument that she did not need to call in her absences is without merit.

Alcegaire is unable to prove two essential elements of her case: that she was entitled to leave under the FMLA and that she gave her employer proper notice of her intention to take FMLA leave. *See Romans*, 668 F.3d at 840. Accordingly, the Court will grant summary judgment in favor of JBS on Alcegaire's FMLA interference claim.

**B.     Wrongful Discharge**

Alcegaire also claims that JBS wrongfully discharged her after she pursued a workers' compensation claim. Ky. Rev. Stat. § 342.197 provides that "[n]o employee shall be . . . discharged . . . for filing and pursuing a lawful [workers' compensation] claim." Ky. Rev. Stat. § 342.197(1). To establish a prima facie claim for wrongful discharge under the statute, Alcegaire must show that "(1) she participated in 'a protected activity,' (2) [JBS] 'knew' that [she] had done so, (3) [JBS] took an 'adverse employment action' against [her], and (4) 'a causal

8

connection' existed between the two." *Witham v. Intown Suites Louisville Ne., LLC*, 815 F.3d 260, 263 (6th Cir. 2016) (citing *Dollar Gen. Partners v. Upchurch*, 214 S.W.3d 910, 915-16 (Ky. Ct. App. 2006)). If Alcegaire meets these requirements, "[JBS] must identify 'a non-retaliatory reason for the adverse employment decision.'" *Id.* If JBS does so, then Alcegaire must show that the reason offered by JBS was merely "a pretext" for retaliation. *Id.*

JBS argues that (1) "Alcegaire's retaliation claim fails because there is no evidence of a causal connection between her discharge and her worker's compensation claim"; and (2) JBS had a legitimate reason for her termination, namely her violation of the attendance policy. (D.N. 36, PageID # 204) Alcegaire responds that (1) the temporal proximity between her pursuit of workers' compensation benefits and her termination satisfies the causation element; and (2) JBS cannot rely on Alcegaire's attendance records as a legitimate reason for her termination. (D.N. 42, PageID # 229) Neither response is persuasive.

"[U]nder Kentucky law, temporal proximity between a worker's protected activity and an adverse employment action is generally insufficient to sustain a retaliation claim where . . . the plaintiff 'does not point to any other facts or circumstances which would support an inference that [the employer] retaliated against [the plaintiff] based on [the workers' compensation] claim.'" *Bush v. Compass Grp. USA*, 683 F. App'x 440, 454 (6th Cir. 2017). Here, Alcegaire points to nothing other than temporal proximity in support of her causation argument. (*See* D.N. 42, PageID # 228-29) Summary judgment is appropriate when the plaintiff has presented no evidence supporting her claim of retaliatory discharge other than temporal proximity between her claim and discharge. *See Bush*, 683 F. App'x at 453-54 (affirming summary judgment against workers' compensation retaliation claim when plaintiff pointed solely to evidence of temporal proximity). The cases Alcegaire cites do not establish otherwise. *See Hume v. Quickway*

9

*Transp., Inc.*, No. 3:16-cv-00078-JHM, 2016 WL 3349334, at *5-6 (W.D. Ky. June 15, 2016) (holding that close temporal proximity is sufficient evidence of a causal connection to survive a *motion to dismiss* a workers' compensation retaliation claim); *Futrell v. Douglas Autotech Corp.*, No. 5:09-CV-21, 2010 WL 1417779, at *3 (W.D. Ky. Apr. 2, 2010) (denying defendant's motion for summary judgment on workers' compensation retaliation claim because of close temporal proximity *and* a genuine dispute of material fact with respect to whether defendant's reason for terminating plaintiff was legitimate).

Even if the causation element were satisfied, summary judgment is also appropriate where the evidence supports the defendant's assertion that the plaintiff was discharged for a legitimate reason. *See Southerland v. Hardaway Mgmt.*, 41 F.3d 250, 251, 256-57 (6th Cir. 1994) (affirming summary judgment for defendant employer where evidence supported defendant's assertion that plaintiff was fired "because of her inability to perform her job"). In this case, the evidence shows that JBS had a legitimate reason for terminating Alcegaire's employment: she failed to comply with the company's call-in requirements on numerous different occasions despite being informed in person that she needed to do so. (*See* D.N. 35-2, PageID 127-28) Alcegaire does not challenge this fact but rather asserts that she never violated the attendance policy because it contains an exception for FMLA absences. (D.N. 42, PageID # 229) As explained in Section II.A.2, *supra*, Alcegaire is incorrect. Although FMLA absences are "excused," the policy contains no exceptions to the call-in requirements for FMLA and other excused absences. (*See* D.N. 42-7, PageID # 282-84) The undisputed evidence shows that Alcegaire violated the attendance policy, which requires employees to notify JBS "on each day that will be missed" if they will miss multiple days "for any reason." (*See id.*, PageID # 282)

Finally, even if, as Alcegaire alleges,[2] JBS fired her after receiving a letter regarding her workers' compensation claim instead of firing her immediately when she failed to provide documentation for her absences (*see* D.N. 42, PageID # 229-30), that fact would be insufficient to show pretext. The Court may consider "the strength of [Alcegaire's] prima facie case, the probative value of the proof that [JBS's] explanation is false, and any other evidence that supports [JBS's] case" in determining pretext. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 148-49 (2000). Alcegaire's prima facie case is weak on the causation element. *See supra*. Further, JBS's delay in terminating her does not prove that she was terminated for any reason other than her failure to comply with the attendance policy. Therefore, the Court concludes that JBS's stated reason for terminating Alcegaire—her failure to comply with the attendance policy—was legitimate and not pretextual.

Alcegaire is unable to prove a causal connection between her workers' compensation claim and her termination. Moreover, JBS has shown a legitimate, non-retaliatory reason for Alcegaire's termination. Accordingly, the Court will grant summary judgment in favor of JBS on Alcegaire's wrongful-discharge claim.

---

[2] Alcegaire cites Exhibit D in support of her assertion that her workers' compensation attorney sent JBS a letter on or about May 14, 2014, approximately thirteen days prior to her termination. (D.N. 42, PageID # 220; *see* D.N. 42-6, PageID # 280) That exhibit appears to have been omitted from her filing. (*See* D.N. 42) In any event, it is immaterial for the reasons explained below.

## III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that JBS USA, LLC's motion for summary judgment (D.N. 34) is **GRANTED**. A separate judgment will be entered this date.

September 26, 2017

**David J. Hale, Judge**
**United States District Court**